(No. 19195.

W. A. Gray *et al.* Appellees, *vs.* The W. A. Black Company *et al.* Appellants.

*Opinion filed February 21, 1930—Rehearing denied April 3, 1930.*

WINTERS, STEVENS, RISK & GRIFFITH, and LANG-WORTHY, STEVENS, McKEAG & HURLEY, (JULIAN CLAY RISK, BENJAMIN F. LANGWORTHY, and GEORGE M. STE-VENS, of counsel,) for appellants.

GEORGE A. MASON, (HENRY E. MASON, and ROY A. WHITESIDE, of counsel,) for appellees.

Per CURIAM: On December 11, 1926, the village of LaGrange Park filed its petition in the superior court of Cook county to levy a special assessment for the paving of certain streets. The assessment roll was confirmed on February 14, 1927, and on March 7, 1927, the contract for the work was let to the W. A. Black Company. On March 16, 1927, W. A. Gray, A. D. McLane, L. S. Hatch and John B. Wleklinski, whose properties were assessed, filed their bill in the superior court of Cook county against the village, its clerk, treasurer, board of local improvements and the contractor to enjoin the prosecution of the work and the collection of the assessment, and a temporary injunction was issued. Answers were filed, other property owners filed their intervening petition praying for the dismissal of the bill, Wleklinski was dismissed as a complainant on his own motion, and upon a hearing before the chancellor the tem-

porary injunction was made permanent. The W. A. Black Company, and J. T. Liscombe, one of the intervening property owners, have appealed to this court, the chancellor having certified that the validity of an ordinance is involved.

The bill alleged that the estimated cost of the improvement was $130,581 and that the property of complainants was assessed $3144.10; that the estimate, recommendation and ordinance were presented to the board of trustees of the village on October 4, 1926, and were referred to the judiciary committee for a report to be made at a special meeting to be held November 15, 1926; that the board of trustees directed that publication of the estimate, recommendation and ordinance be made in a newspaper known as the *LaGrange Citizen;* that at the special meeting of November 15 the ordinance was passed and approved; that a petition was filed on December 11 for the levy of a special assessment; that an assessment roll was filed on December 15, which on February 14, 1927, was confirmed; that on February 10 the board of local improvements advertised for bids; that on February 21 bids were received, and the W. A. Black Company was the lowest bidder for concrete and the H. C. Goelitz Company was the lowest bidder for asphaltic cement and for warrenite; that on March 7 the board awarded the contract to the W. A. Black Company, notice of the award was posted, a contract was entered into, the contractor gave a bond for $100,000, and the board of local improvements and the contractor intend to perform the contract; that on March 16, 1927, the complainants notified the board and the contractor that the ordinance was void and that the special meeting of November 15 was not properly or legally called; that the steps to let the contract had been taken prematurely; that the advertisement for bids, the opening and declaring the same, the letting of the contract, the posting and publication of the notice of the award and the execution of the contract were null and void, and if the work were done

the complainants would object to the approval of the final certificate and would file a bill to enjoin the execution of the contract and the payment of any money out of the special assessment; that the premature advertisement for bids had prevented competition, to the injury and prejudice of complainants and other property owners; that the departures from the Local Improvement act were willful and substantial, had greatly added to the cost of the improvement, and the matters and things complained of had just come to the knowledge of the complainants; that the board of local improvements had adopted a first resolution for an improvement to be selected from three types of pavement, had held a public hearing thereon and resolved to recommend to the village board the making of one of three types of improvement; that the acts of the board of local improvements were without jurisdiction and were beyond its power and authority; that the ordinance was void because it did not describe the nature, character and location of the improvement; that it described three different types of improvement but did not provide which type should be constructed, or when, how or by whom the determination of the type to be constructed should be made; that the judgment confirming the assessment was void because of lack of jurisdiction of the subject matter by the court; that after the bids were received the board of local improvements invited the property owners to vote by postal card as to their choice of improvement, setting forth the name of the contractor, the type of pavement and the cost, and that the board of local improvements would select the type of pavement shown by such vote to be preferred by the property owners so voting; that 43 property owners voted for warrenite, 34 for asphaltic cement, 71 for concrete and 20 optional; that notwithstanding a majority of those voting preferred a re-surfacing job of either asphaltic cement or warrenite, the board of local improvements deliberately and in fraud of the rights of the property own-

ers awarded the contract for concrete, and unless the construction of the improvement with concrete is enjoined the rights of others will be irreparably injured and a multiplicity of suits will follow.

The answers of the W. A. Black Company and the intervenors allege that the ordinance was not void; that the judgment of confirmation was *res judicata* of all questions that should have been raised in the special assessment proceeding; that the facts alleged in relation to the vote taken did not entitle complainants to any relief in this proceeding; that the steps for letting the contract were not prematurely taken; that the complainants were estopped from pursuing any remedy in this proceeding; that the expenses of this proceeding were being paid by one of the disappointed bidders, the bill was not filed in good faith and the court should deny any relief.

Pleas were filed which alleged that the complainants McLane and Gray, since the bill was filed, had become trustees of the village and members of its board of local improvements, and complainant Hatch had become a member of the board of zoning appeals and of the plan commission of the village, and they continue to occupy such offices; that the complainant Wleklinski publicly and voluntarily offered to withdraw from this proceeding, and that complainants by accepting said offices had surrendered their right to prosecute this suit.

The decree found that the ordinance was not illegal, invalid and void; that it was not a nullity because it did not describe the nature, character and locality of the improvement; that it described three types of improvement and provided that one type was to be constructed; that it did not provide which type should be constructed, or when, how or by whom the determination of the type of the improvement should be made, but that the ordinance was not null and void on that account; that the court was not without jurisdiction to enter the judgment of confirmation, and

that the judgment of confirmation was not a nullity and was not subject to collateral attack; that the superior court in the assessment proceedings acquired jurisdiction of the subject matter and of the property assessed, a default was entered and the assessment was confirmed except as to the property of the objectors; that on January 26 the legal objections were overruled and on February 14 the special assessment was confirmed by a judgment duly entered. The decree found that the advertisement for bids was made on February 10, 1927, and was premature and the letting of the contract was invalid and void; that the performance of the contract will result in irreparable injury to complainants, and that a multiplicity of suits will follow unless the performance of the contract is restrained; that the premature advertisement for bids restricted competition, to the great injury and prejudice of the complainants; that the departures from the provisions of the Local Improvement act were willful; that the board of local improvements for the public good should have rejected the bids; that there was no collusion, barratry or maintenance in the bringing of this suit and the complainants had a right to bring and prosecute the same; that they were not disqualified by having become officers of the village since the suit was started, and on account of the invalidity of the proceedings relating to the bidding and the letting of the contract the injunction should be permanent.

Appellees have assigned cross-errors on that part of the decree which upholds the validity of the assessment proceedings against this attack.

The ordinance, with reference to the nature and character of the work, provides as follows: "Upon the roadways as thus prepared shall be laid one of the following types of pavement: Type 'A' shall be warrenite-bitulithic pavement on the existing macadam roadway; type 'B' shall be asphaltic concrete pavement on the existing macadam roadway; type 'C' shall be re-enforced Portland cement

concrete pavement." Then follows a complete description of type "A" pavement, giving full specifications for all materials and method of constructing the pavement. The ordinance also gave a complete detailed description of the asphaltic concrete pavement type "B," giving materials and method of construction. It likewise gave a complete detailed description of the re-enforced Portland cement concrete pavement, giving the thickness, the materials, the manner of construction and complete specifications. It did not provide any method for determining which one of these three types of pavement should be used, or whether the job should be a re-surfacing job of the existing macadam roadway, or an entirely new re-enforced Portland cement concrete pavement.

While in *City of Olney* v. *Baker,* 310 Ill. 433, an ordinance was held good which provided that a paving improvement in a city under the commission form of government should be constructed by whichever of four methods described in the ordinance should be determined by the council, and in *City of Rockford* v. *Schultz,* 296 Ill. 254, an ordinance was held good which provided in the alternative for an asphalt pavement on a concrete base or for a warrenite-bitulithic pavement on a concrete base, and in other cases it was held that the improvement should be made of a certain specified material or of some material equally good, yet in each of those cases the selection of the material to be used was the act of the council, in that the ordinance in the *Olney case* provided that the method should be determined by the council, in the *Rockford case* the ordinance specifically conferred upon the board of local improvements the authority to decide, after the bids were received, which plan should be selected by the board, and in the other cases a standard was adopted for the materials to be used. In the instant case the ordinance made no provision for the determination by anybody of the materials to be used or of the nature or character of the improvement.

The board of local improvements is a creature of the statute, and, while an arm or agency of the municipal government, it is only clothed with such authority as is conferred upon it by statute or by an ordinance of the city passed by authority of the statute. A local improvement to be paid for by special assessment or special taxation must originate with the board of local improvements but is subject to the control of the city. The power to make the improvement is vested in the corporate authorities by the constitution. (*People* v. *Faherty,* 306 Ill. 119; *People* v. *City of Rock Island,* 271 id. 412.) An ordinance duly adopted by the city council lies at the foundation of every special assessment proceeding. The board of local improvements is without any authority to adopt such an ordinance. It is the general rule that when the legislature grants to a municipal corporation power to do any act and prescribes the manner in which the power shall be exercised, the power must be exercised in the manner stated in the grant and not otherwise. (*City of Carlyle* v. *Nicolay,* 333 Ill. 562.) The Local Improvement act provides that the board shall adopt a resolution describing the proposed improvement, which shall be transcribed into the records of the board, and shall give a notice containing the substance of the resolution and the estimate of the cost, with a notification that the extent, nature, kind, character and estimated cost may be changed at the public hearing. The object of the statute is attained if the description of the improvement is such as to give property owners a general understanding of what is proposed to be done and the estimated cost, and that is all the language of the statute requires. (*Walker* v. *City of Chicago,* 202 Ill. 531; *Lanphere* v. *City of Chicago,* 212 id. 440; *McLennan* v. *City of Chicago,* 218 id. 62.) If it is finally decided to make the improvement and an ordinance is prepared under which contracts are to be let and an assessment levied, a description more in detail must necessarily be given, and the provision of the statute as to

such description is quite different. The ordinance must prescribe the nature, character, locality and description of the improvement, and this must be done with such particularity as will secure to the property owners the exact improvement decided upon. (*Ogden & Co.* v. *City of Chicago,* 224 Ill. 294; *City of Chicago* v. *Gage,* 237 id. 328.) To be valid the ordinance must conform strictly to the requirements of the Local Improvement act. Section 8 of the act provides, among other things, "such ordinance shall prescribe the nature, character, locality and description of such improvement." The ordinance here in question was void in failing to determine the nature and character of the improvement or to provide for the determination thereof in some lawful manner.

It is contended by appellants that section 84 of the Local Improvement act provides an adequate and complete relief and that equity is without jurisdiction in the premises, and they cite in support of this contention *White* v. *City of Ottawa,* 318 Ill. 463. In that case it is said: "The material question presented for decision is whether a court of equity has jurisdiction to grant relief where the improvement is not being constructed in compliance with the contract and ordinance but is of materially less value and durability than the improvement required by the ordinance, which the contractor agreed to construct." The cases relied upon are not here in point as in each of them there was a valid ordinance, while in the instant cast the ordinance which is the basis of the entire county court proceeding is void. In *Village of Bellwood* v. *Galt,* 326 Ill. 55, this court said: "It is uniformly held that where the local improvement ordinance is void all proceedings based upon it are void, and will be so treated whether attacked directly or collaterally." Equity has jurisdiction to prevent the enforcement of a void ordinance. Equity will enjoin the collection of a tax levied without authority of law, especially as it would involve a multiplicity of suits to require each

tax-payer to defend against the tax when sued for by the tax authorities. *Schwartz* v. *Big Lake Drainage District,* 307 Ill. 209.

It is contended by appellants that appellees participated in the hearing at the time of the opening of the bids and sought to have the board award the contract to one of the bidders, and that they are estopped from alleging that the ordinance and assessment are void. The ordinance in this case being void, the county court had no jurisdiction and all the proceedings based upon the ordinance were consequently void. A legal and sufficient ordinance is the foundation of a valid assessment. The question of the validity of an ordinance is jurisdictional. A void ordinance is subject to a direct or collateral attack whenever its authority is invoked in a judicial proceeding. (*City of Lincoln* v. *Harts,* 250 Ill. 273.) The ordinance in question and all subsequent proceedings thereunder being void, no acts upon the part of appellees could confer jurisdiction upon the county court and render a void ordinance valid.

It is contended by appellants that this suit cannot be maintained for the reason that it was secretly fostered and financed by one of the disappointed bidders, who was not a resident or property owner and who could not have maintained the suit in his own name. The evidence showed that the suit was the result of a largely attended indignation meeting held in an upper room of the village hall immediately after the letting of the contract, at which a committee was appointed to consider ways and means to protect and preserve the rights of the property owners. This committee employed counsel, and while the committee secured some financial help from one of the unsuccessful bidders, the suit was prosecuted in all respects by the committee and their counsel representing the property owners.

It is contended by appellants that because appellees became village officials they were thereby precluded from maintaining this suit. On March 17, 1927, appellees filed

their bill of complaint herein to prevent further proceedings under a void ordinance. At that time they had vested rights which would have been infringed upon by further proceedings under the ordinance. Thereafter McLane and Gray were elected to the board of trustees and qualified May 2, 1927. There is no conflict between their private interests and public duties. Their private interests required that no proceedings should be had under a void ordinance. Their public duties did not require them to enforce proceedings under a void ordinance, but, on the other hand, it was to the interest of the village that no proceedings be had under a void ordinance, and it is the duty of the trustees to see that only such proceedings for local improvements be had as are based upon a valid ordinance and are authorized by law. We can see no possible connection between membership in the board of zoning appeals or in the plan commission of the village and this ordinance which would prevent Hatch from prosecuting this suit to preserve his vested rights. Property owners who were in favor of the contract were permitted to intervene and were represented by counsel asking that the contract be carried out. With the intervening petition pending, appellees were not in a position, had they so desired, to have dismissed the suit or to have stayed its hearing until after the expiration of their terms of office. All parties participated in the trial, and the court found that the suit was not improperly brought and that by reason of the official positions of appellees they were not disqualified from maintaining and prosecuting their bill of complaint.

The decree of the superior court is reversed and the cause remanded to that court, with instructions to enter a decree declaring the ordinance in question and all subsequent proceedings thereunder void, and ordering an injunction as prayed for in appellees' bill.

*Reversed and remanded, with directions.*