## Weightstill Woods, Appellee, v. Village of La Grange Park, Appellant.

### Gen. No. 39,910.

Opinion filed February 14, 1939.
Rehearing denied February 27, 1939.

STEVENS & CARRIER, of Chicago, for appellant; GEORGE M. STEVENS and GEORGE M. STEVENS, JR., of counsel.

WEIGHTSTILL WOODS, *pro se.*

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

For a comprehensive understanding of the instant case it is necessary to bear in mind the other cases that have been considered by the Supreme and Appellate Courts involving the general subject matter of the litigation. In chronological order the first case reviewed was that of *Gray v. Black Co.,* 338 Ill. 488, wherein the opinion was filed on February 21, 1930. From that opinion it appears that on December 11, 1926, the village of LaGrange Park filed its petition in the superior court of Cook county to levy a special assessment for the paving of certain streets; that the

assessment roll was confirmed on February 14, 1927, and the contract for the work let on March 7, 1927; that on March 16, 1927, plaintiffs in that case, whose properties were assessed, filed their bill in the superior court of Cook county against the village, its clerk, treasurer, board of local improvements and the contractor, to enjoin the prosecution of the work and the collection of the assessment. The Supreme Court held that the ordinance on which the improvement was based was void and that equity had jurisdiction to prevent the enforcement of a void ordinance and to enjoin the collection of a tax levied without authority of law. It was contended by appellants therein that appellees had participated in the hearing at the time of the opening of bids, and were thereby estopped from alleging that the ordinance was void. However, the court said (p. 497):

"The ordinance in this case being void, the county [superior] court had no jurisdiction and all the proceedings based upon the ordinance were consequently void. A legal and sufficient ordinance is the foundation of a valid assessment. The question of the validity of an ordinance is jurisdictional. A void ordinance is subject to a direct or collateral attack whenever its authority is invoked in a judicial proceeding. (*City of Lincoln v. Harts,* 250 Ill. 273.) The ordinance in question and all subsequent proceedings thereunder being void, no acts upon the part of appellees could confer jurisdiction upon the county [superior] court and render a void ordinance valid." Plaintiff was not a party to that cause.

The next step was the filing by plaintiff, on December 5, 1930, of a bill for an injunction and money decree against the village, the board of local improvements of the village and the treasurer and collector, to which defendants therein filed a general demurrer, which was sustained by the chancellor and the complainant therein (plaintiff herein), electing to stand by his bill, it was

dismissed for want of equity, and considered by this court in an opinion filed May 17, 1932, in *Woods v. Village of LaGrange Park,* 266 Ill. App. 435. Briefly, the bill alleged that complainant rendered legal services and made outlays of money for costs incident to a local improvement for the paving of certain streets in the village, resulting in the adoption of an ordinance and the confirmation of the assessment; that the contract for the paving was duly let and entered into; that on April 20, 1927, the village approved and acknowledged it was indebted to complainant for money advanced and legal services rendered and issued its voucher to complainant, stating that from the funds to be obtained from the collection of the first instalment of the special assessment the village would pay to complainant $3,340.50, with interest at 5 per cent per annum; that on September 19, 1930, defendants, without notice to him, caused to be entered in said special assessment case an order which recited that the ordinance and all subsequent proceedings thereunder had been declared void by the Supreme Court of Illinois in *Gray v. Black Co.,* 338 Ill. 488, *supra,* and that the judgment of confirmation should be vacated and set aside; that it was ordered that the order of confirmation be vacated and set aside; that in March, 1930, the village of LaGrange Park instituted a new assessment proceeding for paving the same streets; that a new ordinance was passed and suit filed in the county court as Assessment No. 77; that an order of confirmation was entered May 6, 1930, and a new contract let and the streets were constructed and completed; that in the new ordinance was included the sum of $7,478.82 to be applied toward the cost of making, levying and collecting the special assessment; that on November 18, 1930, a certificate of costs and completion was filed in the county court in said proceeding No. 77; that no funds were collected under the original special assessment which had been confirmed in the superior court;

that the collector was then making collections under assessment proceeding No. 77; that the debt due complainant by reason of outlays of money and legal services remained wholly unpaid, together with interest thereon; "that said money should be paid from special assessment funds or from the general funds of said Village or from both such funds, as the Court may determine; . . . that the Court may determine and decree out of which fund or funds of said Village said debt shall be paid, and shall direct the proper officials of said Village to make payment from the fund or funds so determined; . . . that this Court will restrain and enjoin the defendants and each of them from disbursing any funds authorized or collected by reason of special assessment proceeding #77 of said Village in the County Court of Cook County, applicable to the payment of attorney's fees, costs or expenses, until such time as the matters presented by this bill shall be finally determined; complainant prays for general relief." The opinion discusses the issues raised but is devoted mainly to pointing out that it would be improper to include in the second assessment proceeding attorneys' fees and costs incurred in the first assessment proceeding. The opinion concluded: "The bill of complaint failing to show on its face that the complainant was entitled to the relief sought, the chancellor properly sustained the demurrer. Decree affirmed." Plaintiff then filed a petition for rehearing in which, *inter alia,* he pointed out that

"The opinion of the Court in the present form might be construed as a decision that the appellant is barred from recovery in any proceeding for his legal services involved here. Such a result would be manifestly unjust, because the services were rendered in the course of lawful public duty by the appellant. The appellant submits that there is a legal method of avoiding this injury, which is overlooked by the Court.

"Payment To The Appellant Out Of The Proceeds Of Special Assessment 77, With Which The Opinion

Deals, Is Only One Of The Forms Of Relief Sought By The Bill.

"The opinion recites that the bill averred that the money due to appellant should be paid from the special assessment funds or from the general funds of the village. The opinion deals almost wholly, however, if not altogether, with the question whether the compensation of the appellant can be paid legally out of the proceeds of the second special assessment. Even if that question be decided in the negative, appellant submits that it does not follow that he should be denied recovery in some manner for the services rendered. To the claim of the appellant to be paid out of the general funds of the village, the appellant begs leave briefly to direct the Court's attention.

"The Court Should Not Preclude The Appellant From Obtaining Payment For Services Rendered, Out Of The General Funds Of The Village.

"It is respectfully submitted that the opinion of the Court overlooks the principle of public policy that services rendered by a *de jure* public officer in good faith should in some way be paid for. . . .

" . . . If it be true, as this Court holds in its present opinion, that costs for legal services rendered in the first proceeding as distinguished from physical work done, cannot be provided for in the second proceeding then there must be some other mode of payment in order to prevent injustice. . . .

"The opinion of the court overlooks the fact that if payment be denied from special assessment funds, the result is to cast upon general village funds the whole burden of paying the debt evidenced by warrant at bar issued to evidence an 'expense attending the making and levying special assessment.'

"The opinion of the Court overlooks the fact that the bill of complaint presents facts and asks relief from which the Court shall determine the appropriate fund or funds from which payment shall be made.

"The opinion also overlooks the fact that if it be held that the promise of village to pay out of special assessment funds fails for any reason, then the promise of payee to accept payment out of special assessment also fails and becomes null.

"In such event the legal effect of Section 94 is to convert the warrant into an absolute promise by the village to pay at once the amount thereof out of the general village fund.

". . . If the court rules out payment from special assessment funds, it follows that the case at bar must be reversed and remanded for relief in this or some other proceeding by payment of said debt from general village funds. . . .

"It is respectfully submitted that in its opinion this Court has overlooked part of Section 94 of the Local Improvement Act which provides a legal mode of payment for the services and costs of the appellant.

"Under the provision cited the primary source for payment of costs and expenses, including legal fees incurred in a special assessment proceeding, is the general fund of the municipality. The provision for payment out of the proceeds of the special assessment in cities of less than 500,000 inhabitants, is only permissive. If the option to pay out of the proceeds of the special assessment either is not or, as the Court in this case holds, cannot be exercised by the municipality, then the obligation to pay out of the general funds obtains.

". . . The issuance of the warrant to the appellant in the case at bar, while held by this Court to be ineffectual as against assessment out of which it is payable, is nevertheless an agreement between the appellant and the village upon the amount of his compensation for services completed.

"In an early case, *Maher v. City of Chicago*, 38 Ill. 267, it was held that where the City of Chicago agreed to pay a contractor for services in dredging the Chi-

cago River out of the proceeds of a special assessment
levied for that purpose, and the assessment was held
to be illegal because beyond the charter power of the
City, the City was obligated to pay for the work out
of its general funds. . . .

". . . The appellant respectfully submits that the
principle of the Maher case, supra, applies in the case
at bar; namely, that where lawful services are ren-
dered to a city, the fact that the fund especially desig-
nated for payment fails, does not thereby relieve the
city from liability. Under Section 94 of the Local Im-
provement Act, legal services rendered in a special
assessment proceeding are made and remain a charge
upon the general fund where for any reason they cannot
be paid out of the proceeds of the special assessment.
To hold otherwise would be to permit a city to appro-
priate services without compensation, plainly an at-
tempt at confiscation and contrary to public policy.
. . .

"The usual mode of procuring payment out of the
general funds for costs and services in special assess-
ment proceedings where the special assessment is not
available, is an action of assumpsit. The acts of the
village officials at bar in nullifying, modifying and re-
viewing special assessment proceedings, created such
confusion that only a court of equity could properly
pass upon the entire situation. . . . The present
opinion of the Court might be regarded as an adjudi-
cation which would bar an action at law. In all fair-
ness the appellant is entitled to payment of compensa-
tion for the services rendered and the costs advanced
by him, and out of some fund in some proceeding.

"The appellant therefore respectfully submits that
this Court should allow a rehearing, and reverse the
decree with directions to overrule the demurrer to the
bill, and thus open the door for appellant to procure
payment out of the general funds of the village in this
proceeding, or at least modify its opinion so that any

decree thereunder shall be without prejudice to the right of the appellant to prosecute an action in assumpsit for such payment.

"One principle seems to this appellant to be fundamental, namely that the law should not permit the village to appropriate his services without compensation. Appellant applies to this Court for a rehearing in order that an outcome so unjust may be avoided." The petition for rehearing was denied on May 31, 1932. Plaintiff then asked for a certificate of importance, which was denied, following which he filed a petition for a writ of certiorari in the Supreme Court. The petition, after setting out the opinion of the Appellate Court, urged points substantially the same as in the petition for rehearing. The petition for writ of certiorari was denied by the Supreme Court on October 22, 1932.

On March 22, 1933, plaintiff filed his present action in the superior court of Cook county, and on April 14, 1933, filed his amended declaration, to which defendant filed a general demurrer, which was sustained, and plaintiff electing to stand by his amended declaration, judgment was entered against plaintiff. Plaintiff appealed, and in an opinion filed on June 28, 1935 (*Woods v. Village of LaGrange Park,* 281 Ill. App. 609 (Abst.), this court reversed the judgment and remanded the cause with directions to overrule the general demurrer and for further proceedings not inconsistent with the opinion. Another case on the same general subject matter appears as *Woods v. Village of LaGrange Park,* 287 Ill. App. 201. There plaintiff sued in assumpsit to recover $14,200.74 claimed to be due on account of legal services alleged to have been rendered by him to defendant, which filed a plea of the general issue and an affidavit of merits. The latter alleged that all during the period plaintiff claims to have rendered legal services to defendant and until on or about May 4, 1927, plaintiff was the duly appointed village

attorney; that as such officer he performed legal services for the village, but that an ordinance of the village, passed and approved September 6, 1897, which was in full force and effect during the entire time covered by plaintiff's claim, created the office of village attorney and fixed the duties and compensation of the incumbent thereof; that the ordinance fixed the compensation of the village attorney at the sum of $100 per annum; that the village did not promise to pay for the services any sum in excess of $100 a year, as provided in the ordinance; that on May 4, 1927, plaintiff's term of office terminated and he was not thereafter authorized, employed or empowered to render any service to defendant or to incur any obligation; that as to the cash advanced by plaintiff for court reporting and printing briefs and abstracts the village did not order or direct the incurring of such indebtedness and plaintiff had no power or authority to incur same on behalf of the village; that the services alleged to have been rendered by plaintiff were not reasonably of the value set forth; that during the term of his office as village attorney plaintiff was paid by defendant sums in excess of $100 a year for the services rendered by him; to which plaintiff filed a replication averring that he was never an officer of the village but was employed as an attorney and counselor at law; that at no time "material in this suit was there any valid ordinance of defendant Village establishing any office of village attorney pursuant to any statute"; that plaintiff was never requested or expected to give bond or otherwise qualify as an officer called village attorney, "and there is no record of any such relationship because none was attempted or made, and no such relationship ever existed; but the relationship at all times was one of employment as an attorney and counselor at law to perform the services mentioned in the declaration; at all times there were ample appropriations by the Village to pay any items sued for that may

require an appropriation; all services and disbursements set forth by the declaration are reasonably of the value claimed for them by the plaintiff." At the close of plaintiff's case and on defendant's motion the court instructed the jury to find the issues for the village, which was done and a judgment was entered accordingly. This court reversed the judgment and remanded the cause. We said (pp. 207, 208):

"The rule is settled in this State that a person accepting a public office with a fixed salary must perform the duties of the office for the salary and he cannot legally claim additional salary for the discharge of those duties, even though the salary be inadequate. Whenever he considers the compensation inadequate he is at liberty to resign. (*Gathemann v. City of Chicago*, 263 Ill. 292; 1 Dillon on Mun. Corp. (5th ed.) sec. 426, and cases cited; *City of Decatur v. Vermillion*, 77 Ill. 315.) A person dealing with a municipal corporation is charged with knowledge of the limitations of the power of such corporation to make contracts. (*City of Harvard v. McCauley*, 253 Ill. App. 218; *Snyder v. City of Mt. Pulaski*, 176 Ill. 397; *May v. City of Chicago*, 222 Ill. 595; *DeKam v. City of Streator*, 316 Ill. 123; *Sprinkle v. County of Cass*, 340 Ill. 382.)

"If it had been properly and sufficiently shown on the trial of this case that plaintiff was regularly appointed to and accepted the office of village attorney of the Village of LaGrange Park, that at the time of his appointment and during his incumbency of the office there was in force a valid ordinance creating such office which prescribed the duties and fixed the salary of the village attorney and that the services claimed to have been rendered came within his prescribed duties, plaintiff is barred from recovery in this action. However, there was no showing that plaintiff was appointed village attorney under a valid ordinance as alleged by defendant. The ordinance upon which defendant relies was not even before the court for its

consideration upon the trial." In that case defendant assumed that under the doctrine of judicial notice the ordinance set forth in defendant's affidavit of merits should be as fully recognized as evidence as if its validity had not been made an issue by plaintiff's replication. On that subject we said (pp. 209, 210): "The provisions of the statute (Ill. State Bar Stats. 1935, secs. 1 and 2, pars. 57 and 58, ch. 51) that both the trial court and courts of review will take judicial notice of general ordinances of municipalities within the jurisdiction of the trial court are only applicable to the contents of such ordinances as facts when there is no question raised as to the legal existence or validity of the ordinances themselves. Defendant pleaded the ordinance in question as an affirmative defense and before judicial notice could be taken of its context it must have been properly presented to the court. As heretofore stated the ordinance was not presented at all on the trial of this cause and therefore cannot be judicially noticed by this court. Upon the proper presentation or introduction of the ordinance by defendant plaintiff was entitled, if he could, to impeach it on rebuttal by showing that it was invalid and did not legally exist because the requirements of the law were not complied with in its purported passage." The case went back to the superior court and was again tried, resulting in a verdict finding the issues in favor of the plaintiff and assessing plaintiff's damages in the sum of $8,058. Defendant's motions for judgment notwithstanding the verdict and for a new trial were both denied, judgment was entered on the verdict, and defendant prosecuted an appeal which is now pending in this court as Gen. No. 39,948, 299 Ill. App. 1.

In the instant case the amended declaration alleges that on April 20, 1927, defendant was indebted to plaintiff in the sum of $5,000, for the reasonable value of professional services rendered to it at its request in connection with a special assessment proceeding

confirmed February 14, 1927; that said amount was payable out of the funds of the special assessment proceeding; that statements of account dated April 4, 1927, were submitted and rendered by plaintiff to defendant; that on April 20, 1927, defendant, by its board and duly authorized officers, accepted, approved and allowed his bill theretofore rendered; that as evidence that said indebtedness was then past due and had been agreed on as an account stated, defendant caused to be signed by its officers, sealed with its corporate seal, and issued and delivered to plaintiff its warrant or voucher dated April 20, 1927, and payable from said special assessment fund; that thereby defendant acknowledged that the professional services had been rendered by plaintiff in good faith, in a competent and satisfactory manner, and had been received, accepted and approved by defendant to be reasonably worth at least the sum of money claimed; "which special assessment warrant and acknowledgment of account stated, was in the customary form permitted by the Statute and used by said Village for many years"; that in a subsequent collateral suit which defendant failed to defend, though made a party thereto, and to which plaintiff was not a party, it was determined by the Supreme Court that said special assessment fund never came into existence; that on September 19, 1930, without notice to or consent of plaintiff, defendant caused the order of confirmation in said special assessment proceeding to be vacated and set aside and the cause to be dismissed; that plaintiff thereafter "by appropriate suit filed in this Court, Number 528254, has established that no other special assessment fund could be substituted or provided for payment of said warrant; whereby the right of plaintiff became judicially established and is to have payment made out of the general fund of said defendant provided by the first paragraph of section 94 of the act concerning Local Improvements, to-wit:

" 'The costs and expenses of maintaining the board of local improvements herein authorized, of paying salaries of the members of said board, and the expense of making and levying special assessment or special taxes and of letting and executing contracts; and also the entire cost and expense attending the making and return of the assessment rolls and the necessary estimates, examinations, advertisements, etc., connected with the proceedings herein provided for, including the court costs, including the fees to commissioners in condemnation proceedings, which are to be taxed as above provided, shall be paid by the city, village or town out of its general fund.' which general fund the plaintiff now pursues; and being so indebted the defendant in consideration thereof, then and there promised the plaintiff to pay him out of general funds the said sum of money on request, as the money he therefor reasonably deserved to have . . . ." Upon the case being redocketed in the superior court, defendant pleaded to the amended declaration, the pleas being the general issue, the 5-year statute of limitations and *res judicata,* said pleas being supported by an affidavit of merits. Plaintiff filed a "Motion to Strike Defenses and to Enter Summary Judgment for the Plaintiff," supported by "Special Affidavit by Leave of Court to Support Motion for Summary Judgment." Defendant moved to strike plaintiff's motion for summary judgment on the ground that it was insufficient in that it was not accompanied by an affidavit or affidavits setting forth facts which would entitle plaintiff to any judgment, as required by the statute and rules of court. On March 10, 1937, an order was entered denying defendant's motion to strike the motion and affidavit of plaintiff, sustaining plaintiff's motion to strike defenses, striking defendant's amended affidavit of merits and pleas, ordering that default of defendant be entered for want of a plea, and granting leave to defendant to file a counter affidavit to plaintiff's mo-

tion and affidavit for summary judgment. The counter affidavit permitted to be filed by the order of March 10, 1937, was filed on March 29, 1937. On July 16, 1937, the court entered summary judgment against defendant in the sum of $3,340.50, "together with interest thereon at the rate of five per centum per annum from and after April 20th, 1927, and all costs of this suit, said judgment and costs to be payable out of the general corporate fund of said village"; from the entry of which summary judgment defendant prosecutes this appeal.

The first point urged by plaintiff is that "by notice of appeal the Village asks this court to review only a portion of the order dated July 16, 1938 [1937]." The notice of appeal clearly states that the appeal is from the judgment of the court entered on July 16, 1937. While the notice does not quote the entire judgment order, a perusal of the notice leaves no doubt that the appeal is from the judgment order. The notice prays that the judgment be reversed and that judgment for costs be entered here against plaintiff; or that the judgment be reversed and the cause remanded with directions to enter judgment for costs against plaintiff; or that the judgment be reversed and the cause remanded to the trial court for trial on the merits.

The second point made by plaintiff is that the appeal presents no question as to content and correctness of the order dated March 10, 1937, and that such order is not here for review. Appeals are allowed to reverse only final judgments, orders or decrees. There are special statutory provisions allowing appeals from certain interlocutory orders and from orders granting new trials. The order of March 10, 1937, was not a final order and no appeal could be taken therefrom. Defendant could not appeal until the judgment order of July 16, 1937, was entered. Section 198, ch. 110, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 104.074], provides that every order, determination, decision,

judgment or decree, rendered in any civil proceeding, if reviewable by writ of error, appeal or otherwise, shall thereafter be subject to review by notice of appeal, and such review shall be designated an appeal and shall constitute a continuation of the proceeding in the court below, and shall be deemed to present to the court all issues which theretofore had been presented by appeal and writ of error. The writ of error searched the record. The notice of appeal is sufficiently comprehensive for a review of the entire record. In its brief defendant sets forth six errors which it contends were committed by the trial court, as follows: ''1. The judgment of the court is contrary to law. 2. The court erred in denying and overruling defendant's motion to strike plaintiff's motion for summary judgment. 3. The court erred in ordering that the motion of plaintiff to strike the defenses be sustained, and that the amended affidavit of merits and pleas filed by the defendant be stricken from the record for insufficiency. 4. The court erred in ordering that the default of the defendant be entered for want of a plea. 5. The court erred in confirming and sustaining the motion by plaintiff for summary judgment. 6. The court erred in ordering that summary judgment be entered against defendant in the sum of $3,340.50, together with interest thereon at the rate of 5% per annum from and after April 20, 1927, and all costs of this suit, said judgment and costs to be payable out of the general corporate fund of said Village.'' The notice of appeal being adequate and the record having been filed in due time, and defendant's brief specifying the errors on which it relies, we are satisfied that points one and two in plaintiff's brief are not valid and that defendant is within its rights in discussing and arguing the various points set out in its brief.

The chief criticism leveled at the action of the trial court in entering a summary judgment, is that the pleas, the amended affidavit of merits and counter affi-

davit to the motion and affidavit of plaintiff, stated adequate defenses to the amended declaration. For an understanding of the defenses set up it is necessary to summarize the pleas and affidavits. Defendant pleaded the general issue, that the action was barred by the 5-year statute of limitations, and *res judicata,* in that the decree dismissing plaintiff's bill filed in the superior court of Cook county on December 5, 1930 (which decree was affirmed by this court in the opinion filed May 17, 1932, *Woods v. Village of LaGrange Park,* 266 Ill. App. 435), was between the same parties, involved the same subject matter, and prayed for the same relief as the instant cause. The amended affidavit of merits filed November 21, 1936, and defendant's counter affidavit, filed March 29, 1937, *inter alia,* recite that during all times plaintiff alleges he rendered services to defendant and until on or about May 4, 1927, plaintiff was the duly appointed village attorney of the village of LaGrange Park; that during all of the times in the declaration set forth there was in full force and effect an ordinance passed and approved on September 6, 1897, section 1, chapter 3, of which created the office of village attorney, and sections 17 and 18 of said chapter 3 fixed his duties and compensation; set out the sections *verbatim;* that section 18 provides that the village attorney shall be entitled to receive as remuneration for his services the sum of $100 per annum; that he shall also be entitled to receive such expenses as may be necessary in the performance of his duties, provided the same are previously authorized to be incurred by the president and a majority of the board of trustees; that there was no appropriation of the village out of which the sum claimed by plaintiff could be paid; that the village did not promise to pay for services as alleged, except $100 per year; that, on information and belief, the members of the board of local improvements orally promised to pay plaintiff a

contingent fee for services rendered in connection with special assessment proceedings out of the special assessments completed by plaintiff when and if confirmed; that the village did not promise and agree to pay any sums whatsoever out of the general fund except $100 a year; that the minute book, ordinances and records do not show any resolution or ordinance, nor any contract between plaintiff and defendant providing for the payment of any fees for services rendered in connection with special assessment proceedings other than the ordinance relative to the remuneration for services that the village attorney shall be entitled to receive; that there was no resolution, ordinance or contract authorizing or providing for any compensation whatsoever to plaintiff for services alleged to have been rendered by him, as claimed in the declaration, other than compensation provided for in the ordinance mentioned; that on May 4, 1927, plaintiff's term of office terminated, and he was not thereafter authorized, employed or empowered to render any services whatsoever to defendant, or to incur any obligations on its behalf; that the services alleged to have been rendered are not and were not reasonably of the value set forth in the declaration, and were not of any value whatsoever; that during his term as village attorney plaintiff was paid sums in excess of $100 per year for services rendered; that defendant is not indebted to plaintiff for the alleged services set forth in the declaration, or in any other sum whatsoever; that if defendant did make any promises, as alleged, the statute of limitations has run against such promises; that in the superior court case, No. 528254, appealed to this court and in which an opinion was filed here on May 17, 1932 (*Woods v. Village of LaGrange Park*, 266 Ill. App. 435), between the same parties, and on petition for certiorari to the Supreme Court of the State of Illinois, it was adjudicated that plaintiff here-

in is not entitled to recover from defendant the amount claimed herein for alleged outlays of money and legal services in said amended declaration mentioned; that on January 8, 1923, plaintiff was appointed to the office of village attorney by the president of the village with the advice and consent of the board of trustees; that on January 15, 1923, plaintiff subscribed to an oath of office, which oath is set out *verbatim;* that the oath is prescribed by the constitution and statutes of the State of Illinois; that on May 19, 1923, and again on May 21, 1924, plaintiff took similar oaths, copies of which were attached to the affidavit; that plaintiff continued in the incumbency of his office until on or about April 30, 1927, when he tendered his resignation, reading:

"May 2, 1927

"Ashley W. Gilbert, President and
  Board of Trustees of
    Village of LaGrange Park:
"Dear Sirs:
  "This is my resignation as Village Attorney. Matters in my charge now in court will be completed and reported in due course.

"Yours very truly,
"WW/alc                    "Weightstill Woods";
that the resignation was accepted by the president and board of trustees of the village at a special meeting on April 30, 1927; that during the period from January 8, 1923, to April 30, 1927, plaintiff was the only village attorney and received the compensation provided by the ordinance for his services as such attorney; set out the bill of complaint filed in the superior court on December 5, 1930, and the subsequent proceedings therein which have been heretofore set out at some length.

The excerpt above given from the case of *Woods v. Village of LaGrange Park,* 287 Ill. App. 201, 207, re-

states the well settled law in this State that "a person accepting a public office with a fixed salary must perform the duties of the office for the salary and he cannot legally claim additional salary for the discharge of those duties, even though the salary be inadequate." The judgment in that case was reversed and the cause remanded because under the pleadings defendant had not made proof of the ordinance heretofore mentioned. It is obvious that the pleas and affidavits make a very strong showing that there was an ordinance providing for the office of village attorney, that plaintiff was appointed village attorney, that he subscribed to the required oath of office, that he functioned as village attorney until he resigned on or about April 30, 1927, and that his resignation as village attorney was accepted on April 30, 1927. Plaintiff contends that there was no authority for the establishment of such an office as village attorney. Section 85, ch. 24, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 21.176], provides that "after the expiration of the present term of office of the city attorney in every city organized under this Act, the city attorney in every such city shall be appointed by the mayor, by and with the advice and consent of the city council." Section 146, ch. 24, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 21.236], provides that "wherever the words 'city council' or 'mayor' occur in this act, the same shall be held to apply to the trustees and president of such village, so far as the same may be applicable." Section 152, ch. 24, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 21.242] (cited by plaintiff), provides that "the president and board of trustees may appoint a clerk pro tempore, and whenever necessary to fill vacancies; and may also appoint a treasurer, one or more street commissioners, a village marshal, *and such other officers as may be necessary to carry into effect the powers conferred upon villages,* to prescribe their duties and fees, and require such

officers to execute bonds as may be prescribed by ordinance." (Italics ours.) Therefore the defendant village had the power and right to appoint a village attorney, who thereupon became an officer within the meaning of the law. An officer is the incumbent of an office. Section 24, art. V, of the Constitution of 1870 [Jones Ill. Stats. Ann. Vol. 1, p. 349], defines an office as "a public position created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed"; and an employment as "an agency, for a temporary purpose, which ceases when that purpose is accomplished." On the proposition that plaintiff was an officer and that he could not receive a greater compensation while acting as such officer than $100 per annum, the pleas and affidavits were adequate to state a good defense. As to whether the advances made by plaintiff could be recovered, because no authorization therefor had been given, the pleas and affidavits likewise stated a good defense, and raised a question of fact.

We shall next consider the point urged by defendant that the instant cause is barred as being *res judicata.* That proposition can only be resolved by a careful reading of the bill of complaint filed in the superior court on December 5, 1930; the general demurrer thereto; the decree of the court sustaining the demurrer and dismissing the cause for want of equity, and the opinion of this court (reported in 266 Ill. App. 435); the petition for rehearing, and the petition for a writ of certiorari in the Supreme Court. A reading of that bill of complaint and of the amended complaint in the case at bar shows that the actions were between the same parties and involve the same subject matter, and that in each plaintiff asks to be paid for his services rendered in connection with the special assessment from the general funds of the village. The petitions

for rehearing and for certiorari leave no doubt that such was the position of plaintiff, hence the pleas and affidavits so far as they set up the defense of *res judicata* are valid.

Another contention of defendant is that the instant action is barred by the 5-year statute of limitations. Plaintiff's action is in assumpsit, seeking to recover on a *quantum meruit* for the reasonable value of services alleged to have been rendered. While the voucher is mentioned, a reading of the amended declaration leaves no doubt that recovery is sought on the basis of an implied contract. In considering this point it is well to bear in mind the quotation from *Bunge v. Downers Grove Sanitary District,* 356 Ill. 531, 537:

"Defendant contends that it is not liable because the contracts were contingent upon completion of the improvements. It has been repeatedly held by this court that where a special assessment proceeding is not carried to completion, *either because of the invalidity of the ordinance* or because it is dismissed before confirmation, the municipality cannot avoid payment by setting up the contingent nature of the contract but is liable out of the general fund. (*Maher v. City of Chicago,* 38 Ill. 266; *Gray v. City of Joliet,* 287 id. 280.) Defendant having repudiated its contracts with plaintiffs, they were entitled to treat the contracts as rescinded and recover upon *quantum meruit* so far as they had performed. (*Lake Shore and Michigan Southern Railway Co. v. Richards,* 152 Ill. 59.)" (Italics ours.) The amended declaration filed April 14, 1933, recites, "For that Whereas, the said Defendant on to-wit: the 20th day of April, A. D. 1927, in the County aforesaid, was indebted to the Plaintiff in the sum of Five Thousand and 00/100 Dollars." Plaintiff sought, and in the judgment was granted, interest from April 20, 1927. Furthermore, the ordinance on which the special assessment was based was declared in the

case of *Gray v. Black Co., supra* (opinion filed February 21, 1930), to be void and subject to direct or collateral attack. The ordinance being void from the beginning, the rights of plaintiff, if any, arose then, and not when it was declared void. If that were not so, then the period when the statute of limitations would commence to run would depend on when any interested party elected to attack the ordinance. The ordinance did not become void because the Supreme Court, in 1930, declared it to be void: it was void from the time it was adopted. As the action was on an unwritten contract and not commenced within 5 years after it accrued, it was barred by virtue of the provisions of sec. 16, ch. 83, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 107.275] (sec. 15, Personal Actions), and the pleas and affidavits setting up such defense should be sustained.

Defendant also points out that in the pleas and affidavits it challenged the allegations of plaintiff that the fees that he was attempting to recover were reasonable. Even if no defense was set up, defendants would have a right to put in evidence and be heard on the question of the reasonableness of the fees attempted to be recovered.

For the reasons set out the judgment of the superior court of Cook county is reversed and the cause remanded, with directions to vacate the order of March 10, 1937, except that part thereof granting defendant leave to file a counter affidavit to motion and affidavit of plaintiff for summary judgment, and for such further proceedings as are not inconsistent with this opinion.

*Reversed and remanded, with directions.*

JOHN J. SULLIVAN and FRIEND, JJ., concur.